**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | Def. I.D. # 2108001587A |
| v. | ) | |
| | ) | |
| | ) | |
| RHANDY D. MASSEY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: July 2, 2024
Decided: July 17, 2024

*Upon Remand from the Supreme Court of Delaware for Evidentiary Hearing*

## OPINION

Rebecca E. Anderson, Esquire, Deputy Attorney General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorney for State of Delaware.

John R. Garey, Esquire, 48 The Green, Dover, DE 19901; Attorney for Defendant Rhandy Massey.

**KARSNITZ, R. J.**

1

# I.    PROCEDURAL BACKGROUND

Rhandy D. Massey ("Defendant") was charged with multiple criminal offenses[1] stemming from allegations made by his two minor daughters, M.M. and L.M., of sexual abuse.

On Friday, January 20, 2023, two days before trial, Defendant submitted a motion (the "3508 Motion") pursuant to 11 *Del. C*. § 3508 (commonly called the "Rape Shield Statute"), requesting an *in camera* hearing to determine the admissibility of prior sexual conduct, more fully described below, pertaining to the alleged victims in this matter, L.M. and M.M. Defendant's motion initially addressed three prior allegations: (1) an allegation made by both girls against their half-brother, Nathan Massey, (2) statements by a babysitter about sexual contact between the girls themselves, and (3) an allegation made by the girls against Defendant unrelated to the current charges. The key issue prior to trial became allegation (1). The State filed its response via email on Sunday, January 22, 2023. I addressed the motion on Monday, January 23, 2023, in a pre-trial hearing before

---

[1] First Degree Rape, victim under 12; Second Degree Rape, victim under 12; two counts of Continuous Sexual Abuse of a Child; two counts of Sexual Solicitation of a Child; five counts of Unlawful Sexual Contact, victims under 13; and three counts of Second Degree Sexual Abuse of a Child by a Person in a Position of Trust.

jury selection began. I denied the 3508 Motion, stating:

> I'm going to deny your request to delve into this information … When I look at the standards set forth for me … in *Bailey*,[2] I just don't think you have sufficient evidence that this was false, and I think you have to have that because … I don't really think this is a Rape Shield question, it's kind of related to it but not exactly it, but it's a question of whether that kind of questioning should be allowed, and I think that there's a level that you have to have to be able to allow this kind of evidence that you don't have here.
>
> [The judge in *Bailey*] uses the clear and convincing standard and I don't think you've met that standard, and I think we would end up trying the case against the half brother if we would allow this to come into evidence. So … I'm going to deny your motion with respect to all of the allegations you've alleged in this particular motion.[3]

At the conclusion of a four-day jury trial, on January 27, 2023, Defendant was convicted of all charges. On February 6, 2023, Defendant filed a motion requesting a new trial pursuant to Delaware Superior Court Criminal Rule 33 (the "Rule 33 Motion"). In support of the Motion, Defendant argued, *inter alia*, that I used an incorrect legal standard in denying Defendant's 3508 Motion by not applying *Bryant v. State*.[4] I denied the Rule 33 Motion on March 7, 2023.

On March 27, 2023, I sentenced Defendant to a total of 119 years of incarceration.

---

[2] *State v. Bailey*, 1996 WL 587721 (Del. Super. Sept. 12, 1996).
[3] Transcript of Motion, Monday, Jan. 23, 2023, at 26-27.
[4] 734 A.2d 157 (Del. 1999).

Defendant filed a direct appeal to the Delaware Supreme Court and filed an opening brief, asserting, *inter alia*, that I erred by denying his 3508 Motion for an *in camera* proceeding to allow him to determine the relevancy or the truth or falsity of the complaining witnesses' prior allegations of sexual abuse, and excluding evidence of past incidents of a sexual nature pertaining to the complaining witnesses to show that they had prior sexual knowledge.

In connection with his appeal, Defendant filed a motion to remand this case to me (the "Defense Remand Motion") for the resolution of his motion to release the presentence investigation report (the "PSI Report") to him. In his interview with the PSI investigator, Defendant disclosed that one daughter had previously accused her cousin, A.M., of another incident of sexual abuse. The PSI investigator subsequently obtained the report documenting this allegation and attached it as an exhibit to the PSI Report. In his Defense Remand Motion, Defendant asserted that the State's failure to notify him of the sexual abuse allegation against the cousin, A.M., and to disclose the police report documenting the allegation, constituted a *Brady*[5] violation that could be raised on direct appeal. Defendant also asserted that the State's failure to disclose the A.M. allegation is inherently intertwined with the Nathan Massey allegation that was the subject of the 3508 Motion which I denied, could also be raised on direct appeal, and that because of these violations he was unable to present a complete defense. On

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

September 25, 2023, the Delaware Supreme Court ordered the Office of Investigative Services to provide it with the sealed PSI Report.

The Supreme Court also granted Defendant leave to file an amended opening brief. On October 30, 2023, Defendant filed his amended opening brief with the Court, which added to the previous claims an additional claim of a *Brady* violation with respect to the A.M. allegation. Defendant contended that the A.M. incident would have shown how L.M. acquired knowledge of sexual interaction, putting her in a position to conjure false allegations. Defendant also contended that this would have opened the door for him to utilize an expert to explain how a child copes with sexual abuse, how it influences her future behavior, and whether it could result in subsequent false allegations.

On November 9, 2023, the State filed its own Motion to Remand and to Stay Briefing (the "State Remand Motion"), in which the State also asked the Supreme Court to remand the case to me in order to afford Defendant the opportunity to inquire of the complainants whether their prior allegations against Defendant and Nathan Massey were false, to supplement the record through an evidentiary hearing, and to afford me the opportunity to reconsider my ruling on the 3508 Motion.[6] This would also allow any missing record to be to be completed concerning the A.M. allegation.

---

[6] Citing *Bailey v. State*, Del Supr., No. 475, 1995, Walsh, J. (June 7, 1996) (ORDER).

5

On November 9, 2023, the Supreme Court entered an Order[7] remanding the case to me for an evidentiary hearing within 90 days[8] with respect to the complainants' prior allegations of sexual abuse against Nathan Massey, Defendant, and A.M. as to falsity, and to make any findings and grant such relief as may be appropriate. I also was directed to complete any missing record about the A.M. allegation. The briefing schedule was stayed until further order of the Court. The Supreme Court retained jurisdiction over the case.

On February 21, 2024, I held the hearing required by the Supreme Court. The witnesses were M.M., L.M., and Inga Lambert (formerly Massey), the mother of the two complaining witnesses and the former wife of Defendant. A video interview from the Child Advocacy Center ("CAC") was also introduced as evidence. This testimony and evidence, and my legal analysis thereof, are set forth below.

On April 22, 2024, Defendant filed his brief in support of his request for relief. On May 16, 2024, the State filed its response. On May 31, 2024, Defendant filed his reply. On July 2, 2024, I held oral argument. These are my factual findings and legal opinion following the remand hearing ordered by the Supreme Court.

---

[7] *Massey v. State*, Del. Supr., No. 131, 2023, Traynor, J. (Nov. 9, 2024) (ORDER).
[8] If it was not feasible for me to hold this hearing within 90 days, I was required to file a status report with the Supreme Court. I filed one such report, after the scheduling order was established, when the State's request for an extension was granted.

## II.    SCOPE OF REMAND HEARING

At oral argument on July 2, 2024, the parties expressed divergent views on the scope of my powers on remand under the terms of the Supreme Court's November 9, 2023 Order. The State took the view that I could make factual findings and then, under applicable law, reconsider Defendant's 3508 Motion and any additional allegations concerning A.M. in light of those factual findings. In other words, I could issue a legal opinion, based upon the evidence of record as expanded by the remand hearing. Defendant took a more expansive view that I had power to order more fulsome relief, such as granting Defendant a new trial now, without further Supreme Court review. However, because the Supreme Court has retained jurisdiction, I view my powers as limited by the specific terms of the Court's Order. An unsigned portion of the Order states that I can, in addition to holding an evidentiary hearing, completing any missing record, and making supplementary factual findings, "grant such relief as may be appropriate." However, the Comments of Justice Traynor state that I may only hold the evidentiary hearing and make any supplementary factual findings.

I am guided by an analogous remand hearing in *State v. Collins*.[9] In that case, the parties requested that the Supreme Court remand to the Superior Court to conduct an evidentiary hearing on a discrepancy involving a trial exhibit. The Supreme Court retained jurisdiction and remanded "as requested by the parties"

_____
[9] 2015 WL 412924 (Del. Super. Dec. 22, 2015).

7

to the Superior Court to "conduct a hearing on the discrepancy."[10] The Superior Court held a hearing and issued an opinion with factual findings and related legal conclusions, in which it noted that "in granting the parties' request for remand to conduct a hearing on the discrepancy, the Supreme Court gave the [Superior] Court broad discretion in determining how to proceed on the legal issues."[11]

Therefore, I state my supplementary factual findings herein, based on the record and any additional evidence presented at the evidentiary hearing, and my legal opinion.

## III.    *BRADY* VIOLATION

Defendant alleges that the State committed a *Brady*[12] violation by failing to turn over evidence reflecting prior abuse of L.M. by her cousin, A.M., prior to trial. Both L.M. and A.M. were juveniles at the time of the alleged offense. Defendant argues that given the lack of corroborating evidence to buttress the allegations against Defendant, the credibility of the complaining witnesses becomes critical, and, therefore, Defendant should be granted a new trial based upon this *Brady* violation. I disagree for four reasons.

First, there *was* corroborating evidence. Of note, there was significant corroborating evidence of L.M.'s allegations against Defendant and subsequent

---

[10] *Collins v. State*, Del. Supr., No. 88, 2015, Seitz, J. (Oct. 23, 2015) (ORDER).
[11] *State v. Collins*, 2015 WL 412924 (Del. Super. Dec. 22, 2015).
[12] *Brady v. Maryland*, 373 U.S. 83 (1963).

8

testimony at trial that Defendant's semen was found on a pink blanket used by Defendant in the family living room. L.M. testified that Defendant would ejaculate on the blanket.

Second, Defendant was not prejudiced under *Brady* because he was well aware of the allegation involving his daughter, L.M. and his nephew, A.M. The main reporting person and witness to the alleged abuse was Defendant's juvenile son and L.M.'s half-brother, Nathan Massey. Defendant's wife at the time, Inga Massey, testified that she immediately left work upon finding out about the allegations and called Defendant on her way to him and their children. When Inga arrived at football practice where Defendant and the girls were, Defendant told Inga that he did not feel it was necessary to take L.M. to the hospital so long as nothing else happened. According to Inga, Defendant himself spoke to Nathan Massey and L.M. about the allegations involving A.M. Defendant was aware of the allegations at the time they were reported, as the entire Massey family was involved.

Third, Defendant himself was the one who told the PSI investigator about the allegation, so he was clearly aware of the allegation. He could have requested that the trial court allow him to explore the allegation for credibility purposes when he asked the trial court to explore the allegations made by L.M. and M.M. against his son, Nathan Massey. However, he made no such request despite being aware of the allegations.

Fourth, even if Defendant was not aware of a police report regarding the

incident involving A.M., he is not prejudiced because he has now, following the evidentiary hearing, had the chance to cross-examine L.M. about her disclosure at the CAC. He also had the opportunity to cross-examine Inga about the disclosure and subsequent actions taken by Inga and by Defendant following the allegations brought forth by Nathan Massey. There has been no evidence presented by Defendant as to falsity, either by L.M. or by Inga, regarding the allegations against Nathan. Therefore, any evidence relating to A.M. would be inadmissible in trial under § 3508 and the Delaware Rules of Evidence.[13]

## IV. THE REMAND HEARING AND § 3508 ANALYSIS

### A. DEFENDANT'S 3508 MOTION

In my view, Defendant's original 3508 Motion was poorly constructed and undeveloped. It also put me in a position with little time to analyze the issues on the eve of trial. In his 3508 Motion, Defendant asserted that the alleged victims, ages 9 and 11 at the time of the trial, were the subject of other incidents where either the alleged victims or others on their behalf claimed sexual abuse occurred. I will detail the incidents but, before doing so, I will explain Defendant's arguments for their admission. Defendant asserted the incidents showed a general sexual indoctrination, or "sexualization," of the young girls. At one point Defendant argued that an expert could explain how this general sexual

---

[13] Rules 608 (Witness's Character for Truthfulness or Untruthfulness) and 403 (Exclusion of Relevant for Prejudice).

indoctrination[14] might lead to the claims made against him. Defendant's alternative argument was that he should be able to show the prior incidents because Defendant had a question as to their validity, and thus the credibility of the alleged victims. I call this the falsity issue. At oral argument on remand, Defendant expressly abandoned the "sexualization" issue and relied solely on the falsity claim.

I addressed the §3508 issue prior to trial. I reviewed the documents of other incidents and found no evidence of falsity. I find it of significant importance that the children involved were very young. In at least one incident, the child was two years of age and likely not competent to testify. There were no facts as in *Bryant*[15] where a teenager made claims of sexual assault against a number of people, and then retracted them. Circumstances such as those in *Bryant* rightfully require some relief from §3508 under a "cry wolf" theory. We did not have those circumstances here.

I am of the opinion, then and now, that Defendant never met the threshold of §3508 to require an out of the presence of the jury examination of the alleged victims as mandated by §3508. The requirements of §3508 are:

> (1) The defendant shall make a written motion to the

---

[14] In my mind, this argument raises interesting issues of how children learn about sex in general. Common sources of knowledge are parents, siblings, friends and sex education. The important point here is not how and when a child learns about sex. For me, the sophistication of the child tells us nothing about a child's propensity to lie. Defendant never bridged that gap for me.

[15] *Bryant v. State*, 734 A.2d 157 (Del. 1999).

Court and prosecutor stating that the defense has an offer of proof concerning the relevancy of evidence of the sexual conduct of the complaining witness which the defendant proposes to present, and the relevancy of such evidence in attacking the credibility of the complaining witness.

(2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated.

(3) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at such hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant.

(4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant, and is not inadmissible, the court may issue an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.

Section (a)(3) gives me a gatekeeping function. If I determine that "…the offer of proof is sufficient…" then I must hold a hearing outside the presence of the jury. For me, what was offered by Defendant did not meet that standard. As I said when I denied Defendant's original 3508 Motion on January 23, 2023, what was offered to me before trial was factually insufficient as there was no indication whatsoever of falsity. Defendant points to the fact that, despite the allegations, the State did not prosecute. In my view, that is not enough to demonstrate falsity. I also weigh heavily the age of all the people involved in the incidents.

## B. THE REMAND HEARING

I held the evidentiary hearing on February 21, 2024. I will now describe all the incidents originally raised by the alleged victims, and those actually presented at the remand hearing. There were originally five such incidents raised, but this number was reduced to two as the case proceeded:

(1) 2015 Incident

A.M., L.M.'s cousin, allegedly engaged in penile-vaginal intercourse with L.M, then two years old. This was reported to Inga, L.M.'s mother, by the babysitter. The babysitter had been told by a young teenage boy, who had himself been told by Nathan Massey, that Nathan had observed A.M., with his pants down, insert his penis into L.M. The police followed up and scheduled forensic interviews with both Nathan and L.M. at CAC. The police also spoke to Inga. At the remand hearing, L.M. was unable to answer any questions regarding this incident. Inga also had little recall of the incident, and simply referred to the police reports.

It came as no surprise to me that the alleged victim had no recollection of the incident which occurred when she was two years of age. I also heard from the mother and reviewed the child's interview at the CAC. None of the evidence proved any falsity. I found the CAC interview was instructive. It lasted about 20 minutes. For the first five minutes, the child tried to please the interviewer. The rest was playtime. At some point, she did indicate someone touched her inappropriately, but that very general statement was the extent of her recollection.

13

(2) First 2017 Incident

L.M., now four years of age, and M.M. awoke the sleeping Defendant and told him that their half-brother, Nathan Massey, then 11 or 12 years old, pulled down his pants and told M.M. to suck his penis. Defendant confronted Nathan, who denied this. Inga called home and was told by Defendant about this incident. She returned home and took her daughters to the hospital. The hospital informed the police of the incident, and the police responded to the hospital. Inga reported the incident to the police, who arranged for forensic interviews of the girls. During the CAC interview, L.M. implicated Nathan in unlawful sexual contact against her as well. At the remand hearing, the witnesses generally verified these facts.

(3) The 2018 Incident

M.M. reported to police officers that Defendant touched her in her crotch area. It was later conceded that they were just rough-housing, and his elbow accidentally touched her groin area. Defendant subsequently dropped his request to introduce evidence of this incident.

(4) Second 2017 Incident

In the police report of the 2018 incident, the police were told by a babysitter for the girls that she saw them "putting things up each other's butts." Defendant subsequently dropped his request to introduce evidence of this incident.

(5) Undated Incident

There was some mention in the police reports of cocaine use by Defendant and

14

that Defendant exposed himself to the girls in his car. Defendant did not pursue his request to introduce evidence of this incident.

For whatever reasons (perhaps the young ages of the alleged victims, A.M., and Nathan Massey), the police and the State did not pursue charges against anyone for the first two incidents. In any event, just as I ruled in my initial ruling on the 3508 Motion, the testimony at the remand hearing and the CAC report contained absolutely no evidence of falsity, or that either L.M. or M.M. had ever recanted their stories. Indeed, their testimony at the remand hearing essentially buttressed their original reports from 2015, 2017, and 2108, with allowances made for the young ages of the girls and the dimming of memories over time. As discussed below, a determination of falsity is a lynchpin of my legal analysis, and my determination of falsity was the stated purpose of the Supreme Court's remand. Moreover, Defendant at the remand hearing dropped his "sexualization" theory and defaulted to falsity.

## C. LEGAL ANALYSIS

In his opening argument and reply, and at oral argument on July 2, 2024, Defendant asked me to reconsider my denials of his 3508 Motion and his Rule 33 Motion, and to order a new trial where the §3508 evidence would be presented to the jury. Moreover, in Defendant's view, the Supreme Court's remand Order permits me to pick and choose which incidents, and how much of each incident, may be presented to the jury – it is not an "all or nothing" proposition. He again argued that I applied the wrong legal standard when denying these two Motions.

Defendant cites *Bryant v. State*[16] as the proper legal standard. However, the Delaware Supreme Court in that case specifically noted, "the Superior Court did not consider the Rape Shield Statute in its ruling and in this appeal the State has not relied upon the statute as a basis for exclusion."[17] The decision instead focuses on the ability of counsel to cross-examine a witness concerning prior specific incidents of untruthfulness.[18] Defendant, in the Motion, argues that the Delaware Supreme Court created a standard when it stated: "even where the evidence is inconclusive as to falsity, prior allegations of sexual assault may be admitted to challenge credibility."[19] The Supreme Court went on to say:

> Given the minimal corroborative evidence in this case and the unusual social history of the complaining witnesses the issue of credibility looms large. Any attempt to restrict cross-examination under these circumstances must proceed on a complete record with a full appreciation of the relevance of such testimony. We conclude that, on this record, the trial court's ruling regarding the five excluded allegations, *without further effort to determine their falsity,* was an abuse of discretion. Because we cannot with confidence assess the impact of the excluded evidence, we must reverse and remand for a new trial.[20] [Emphasis supplied]

In my view, this case is distinguishable from *Bryant*. *Bryant* notes that "the precise issue is not before us..."[21] Furthermore, the allegations in the *Bryant* case included two allegations which were demonstrably false because the alleged victims recanted their statements. Such recantation evidence or other evidence

---

[16] 734 A.2d 157 (Del. 1999).
[17] *Id.* at *2 n.2.
[18] *Id.* at *2.
[19] *Id.* at *3.
[20] *Id.*
[21] *Id.*

16

of falsity does not exist here. Moreover, *Bryant* did not address 11 *Del. C.* § 3508 and how that specific statute would affect the admissibility or inadmissibility of supposed prior false allegations.

Rather, I rely upon *State v. Bailey*,[22] a § 3508 case. The Delaware Superior Court in that case found that prior allegations of sexual assault may be admissible at trial only if the defendant makes a showing that the witnesses' prior allegations of sexual assault were false.[23] In this case, Defendant failed to make any showing of falsity, only self-serving assertions that the prior allegations may have been false accusations. There have been no recantations of any prior allegations against either Nathan Massey, the half-brother to both alleged victims, or against A.M., their cousin. In fact, both alleged victims referenced Nathan in their forensic interview at the CAC following their allegations of abuse against Defendant. During that interview, both girls maintained that something had occurred with Nathan previously.

There was considerable discussion at oral argument of several Rhode Island cases. In *State v. Oliveria*,[24] cited by the Delaware Supreme Court in *Bryant*, the Rhode Island Supreme Court held that the complaining witness' prior allegations of abuse were admissible even if those prior allegations had not been proven false

---

[22] 1996 WL 587721 (Del. Super. Sept. 12, 1996).
[23] *Id.* at *6.
[24] 576 A.2d 111 (R.I. 1990).

or withdrawn. However, almost twenty years later, the Rhode Island Supreme Court limited its holding in *Oliviera*, stating that "[a]lthough *Oliviera* does not require a defendant to prove the falsity of a prior accusation, unless there is a minimal showing that the prior accusation was, in fact, false, its probative value is slight. As we stated in *Lynch*, 854 A.2d at 1035, a prior true allegation is irrelevant because it is not probative of the witness' character for truthfulness … Even though under our case law a defendant need not prove the falsity of the prior accusation, he must at least present some indicia tending to show that the prior accusation was false …"[25]

In this case, Defendant has not even presented a minimal showing that the prior allegations were, in fact, false, and there are no indicia tending to show that the allegations were false. Thus, the allegations presented in the 3508 Motion and at the remand hearing are irrelevant because they are not probative of the complaining witnesses' character for truthfulness. Defendant has failed to meet this threshold requirement.

In its response and at oral argument on July 2, 2024, the State argued that, absent any evidence of falsity, there is no basis for the admission of the §3508 evidence. Moreover, the additional §3508 evidence, if admitted at a new trial, would only confuse the jury and its prejudicial effect would far outweigh its probative value. The acts alleged to have been committed by Nathan and A.M.

---

[25] *State v. Manning*, 973 A.2d 524, 535 (R.I. 2009).

are sufficiently different in kind from those of which Defendant was convicted, and as such would otherwise be irrelevant or inadmissible at trial. I agree.

Additionally, I believed when I ruled on the 3508 Motion and the Rule 33 Motion, and I continue to believe after the remand hearing, that an appropriate purpose for introduction of this evidence was not shown by Defendant. Defendant wanted to make the contradictory arguments that the alleged victims were lying about Nathan and A.M., but that they were previously abused by Nathan and A.M. None of the police reports provided to Defendant during pre-trial discovery or after the *Brady* violation was discovered show that either alleged victim provided false information or lied about the prior allegations against Nathan, A.M., or anyone else. In my view, Defendant has not met any standard to allow for introduction of this evidence at trial.

I did not want the trial to turn into a trial within a trial against Nathan, and I do not want a new trial to turn into a trial within a trial against Nathan and A.M. In *State v. Benson*,[26] the defendant was charged with raping a boy, N.B., under the age of 12. The defendant moved under § 3508 to introduce evidence from incidents where N.B. had engaged in sexual contact with his minor sisters to establish N.B.'s possible motive to fabricate the allegations against the defendant to impeach N.B.s credibility.[27] The defendant and the State could not agree on

---

[26] 2019 WL 1014792 (Del. Super. Feb. 28, 2019).
[27] N.B. ultimately pleaded delinquent in Family Court to two misdemeanor-level offenses.

which of five categories of evidence relating to N.B.'s sexual conduct towards his sisters, if any, were admissible under § 3508. The Court determined that only three of the five categories of evidence were admissible, stating that the scope of that evidence must be limited in order to prevent [the] trial from devolving into a trial within a trial:

> Section 3508 expressly permits the Court to limit the scope of the evidence offered to only that which is necessary to attack the complaining witness's credibility, and the rules of evidence also give the Court discretion to limit evidence to avoid wasting time and to protect witnesses from harassment or undue embarrassment.[28]

For all the reasons discussed above, I again deny Defendant's 3508 Motion on the facts of record, as expanded by the remand hearing.

## IV.  CONCLUSION

This matter is returned to the Delaware Supreme Court.

**IT IS SO ORDERED**.

/s/ Craig A. Karsnitz
Craig A. Karsnitz

cc:     Prothonotary

---

[28] *Benson*, 2019 WL 1014792, at *2; see also *State v. Davis*, 2007 WL 4234453 (Del. Super. November 28, 2006).